275 So.2d 444 (1973)
George P. ROBINSON, Plaintiff-Appellant,
v.
William P. ATKINS, and the Democratic Executive Committee of Claiborne Parish, Defendants-Appellees.
No. 12103.
Court of Appeal of Louisiana, Second Circuit.
March 13, 1973.
Hal R. Henderson, Arcadia, Holloway, Baker, Culpepper, Brunson & Cooper by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Kitchens, Benton & Kitchens by John B. Benton, Jr., Minden, for defendant-appellee William P. Atkins, Exceptor.
Meadors, Atkins & Meadors by William F. M. Meadors, Jr., Homer, for defendant-appellee Democratic Executive Committee of Claiborne Parish.
Before AYRES, PRICE and HEARD, JJ.
HEARD, Judge.
This contest was brought under the provisions of LSA-R.S. 18:364 by George F. Robinson, unsuccessful candidate in a primary election for the position of school board member from School Board District # 7 of Claiborne Parish, against William P. Atkins, plaintiff's successful run-off opponent, and the Democratic Committee of that parish which called and promulgated the results of the election. In the run-off election Robinson received 200 votes and Atkins received 231. It is Robinson's contention that Atkins was not a resident of School Board District # 7 at the time of his qualification, or at the time of the two primaries, or at the time of promulgation and, therefore is not legally qualified to run for nor to be certified as the Democratic nominee for that position.
Defendant Atkins' position is that at all times mentioned he was a resident of and domiciled in District # 7 and that he possessed all the requisite qualifications for *445 the position he sought. Before answering, Atkins filed exceptions of lack of jurisdiction, no cause of action and prescription, all of which were referred to the merits.
Defendant, Claiborne Parish Democratic Executive Committee, filed exceptions of improper joinder of parties and no right and no cause of action which were sustained by the trial court dismissing it from the suit. Upon the merits, the trial court rendered judgment in favor of defendant Atkins rejecting plaintiff's demands. Robinson perfected this appeal.
The undisputed facts are as follows: for several years before this election, the members of the school board had been elected from parish wards with Robinson representing Ward # 6 and Atkins, Ward # 5 of Claiborne Parish. Pursuant to a judgment of the United States District Court for the Western District of Louisiana, under the "one-man, one-vote" mandate of the United States Supreme Court, the school board redistricted the parish on a population basis ignoring the previous ward lines. The boundary separating new Districts # 6 and # 7 was the center line of Louisiana Highway 9. Atkins had lived virtually all of his life (from age 3 years until the time of his second marriage) on the east side of the highway in what is now District # 7. He had business interests and has voted there throughout his adult life. The only exceptions were his three years in the service during World War II and the few weeks he spent in an apartment while his brother and his family visited their mother's house where he was living at the time. Atkins had lived in a house adjacent to his parent's home built for him and his first wife. Following his separation and divorce from his first wife, he remained in the house with his son. About 1971, Atkins decided to move into his mother's home and rent his house. Shortly thereafter his house was destroyed by fire. Atkins remarried in March, 1972, and purchased a trailer then located at Dixie Inn. After staying there a week, the trailer was moved to a site in District # 6 across Highway 9 from his mother's home. Atkins was living in the trailer at the time of his qualification and election to the board from District # 7. There is uncontradicted evidence, however, that even before their marriage, Atkins and his present wife had finalized plans to build a home and chose a site on the east side of the highway in District # 7. The site was on a piece of property deeded to Atkins in 1967 by his mother although not recorded until May, 1972. Actual construction began in the summer of 1972 with defendant ready to occupy it a few weeks after the trial.
The issue before this court is: does the fact that Atkins resided in the trailer across the road from District # 7 under the circumstances of this case render him ineligible for the office of school board member from that district? In a well reasoned opinion the trial judge found that he was eligible and we concur. It should be noted that because of our views on the merits we deem it unnecessary to rule upon the exceptions filed by defendants.
Article 8, § 13 of the Louisiana State Constitution provides:
"No person shall be eligible to any office, State, district, parochial, municipal or ward, who is not . . . a duly qualified elector of the State, district, parish, municipality or ward, wherein the functions of said office are to be performed.. . ."
Article 8, § 1(a) further provides a definition of who is entitled to vote in any election as follows:
"He shall have been an actual bona fide resident of the state for one year, of the parish six months, of the municipality in municipal elections four months, and of the precinct, in which he offers to vote, three months next preceding the election;. . ." (emphasis supplied).
There have been several cases interpreting the term "actual bona fide resident," *446 and, while they involve situations where it is claimed a candidate has more than one residence, we find the reasoning apposite herein. In Caufield v. Cravens, 138 La. 283, 70 So. 226 (1915) the Supreme Court stated:
". . . The question is one largely of intention, and the intention of a person, in that respect, is determined by his expressions thereof, at times not suspicious, and his testimony, when called on, considered in connection with his conduct and the circumstances of his life. . . The term, `actual bona fide resident,' as used in the Constitution, cannot reasonably be interpreted to mean that, in order to acquire, and, still less, to retain, such status, one must remain continuously in the town, or upon the premises, of the residence, and the status described is not therefore affected by temporary absences, occasioned by considerations of duty, business, health, or pleasure, unless, being voluntary, they extend beyond prescribed periods, or, are accompanied by the acquisition of residence elsewhere; . . . Nor, is it affected by the fact that one resides in a hotel, or boarding house, or in the house of some family connection, since the law prescribes no condition in that respect.. . ."

[70 So. 226, 227]
In the later case of Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921) that definition or test was made more explicit:
"[T]he law does not allow one to become an elector by constructive residence, nor is the matter controlled solely by intention, no matter how bona fide it may have been; but we are called upon to apply and interpret the meaning of the words `actual bona fide resident,' and we take it that those words are to be given their ordinary meaning and significance. In the nature of things, they cannot be said to mean that he must occupy his place of abode every moment during the period of time necessary to become a resident in the sense of qualifying him as an elector; for the necessities of the case require that he should be permitted to pursue the ordinary affairs of life. However, we think that he is required to maintain such a relation with the place or premises so selected as will entitle him at his will, and without making new arrangements therefor upon each return, to occupy such place whenever his necessities or pleasure require, and this without having to ask the permission of someone else. . . ."

[90 So. 145, 150]
See also Melerine v. Democratic Parish Executive Committee, 164 La. 855, 114 So. 711 (1927); Stavis v. Engler, 202 So.2d 672 (La.App. 4th Cir. 1967); Brown v. Democratic Committee, Court of Appeal, Fourth Circuit, Third District, 238 So.2d 48 (La.App. 4th Cir. 1970).
Thus the question of whether one is an actual bona fide resident must be determined by the honest intentions of that person, and the quality of these intentions must be tested in each of his expressions thereof, at times not suspicious, and his testimony, considered in connection with his activities and the circumstances of his life. The overall circumstances of the instant case convince us that Atkins has never shown any intention of permanently abandoning his legal residence within the territorial limits of District # 7 and that his habitation in the trailer during this period of time was merely a temporary arrangement pending the reconstruction of his home on the other side of the highway. We feel Atkins was involuntarily displaced because of the destruction of his home and the fact that he had planned to and was rebuilding his home there as well as conducting his businesses there show a constant and abiding intention to return. See Rigdon v. Bogan, 160 La. 551, 107 So. 403 (1926).
*447 For the above reasons and in compliance with our decision rendered March 12, 1972, the judgment dismissing Robinson's action with prejudice is affirmed at appellant's cost.