361 So.2d 319 (1978)
W. Glenn SOILEAU
v.
BOARD OF SUPERVISORS, ST. MARTIN PARISH, et al.
No. 6783.
Court of Appeal of Louisiana, Third Circuit.
July 26, 1978.
*320 Stanford B. Gauthier, Breaux Bridge, Paul J. deMahy, George W. McHugh, Jr., St. Martinville, for defendants-appellants.
W. Glenn Soileau, Breaux Bridge, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and CUTRER, JJ.
CUTRER, Judge.
Plaintiff, W. Glenn Soileau, instituted this suit seeking to have Paul J. deMahy, appellant, declared disqualified to run for the position of judge of the City Court of the town of Breaux Bridge. Appellant, Paul J. deMahy, filed four exceptions: a peremptory exception of vagueness; a dilatory exception of prematurity; a peremptory exception of failure to join an indispensable party; and a peremptory exception of no cause of action. These exceptions were overruled. Answer was then filed and, after trial on the merits, the trial court ordered that Paul deMahy's name be removed as an eligible candidate for the position of city court judge for the town of Breaux Bridge and that his name not be placed on the ballot as an eligible candidate for that position. From this judgment defendant has appealed.
There are three issues to be resolved in this case:
(1) whether the trial judge erred in overruling the exceptions;
(2) whether defendant was a ". . . resident elector of the territorial jurisdiction. . . ." as required by LSA-R.S. 13:2488.73;[1]
(3) whether defendant is qualified under the same statute which provides that "The judge of the city court shall be licensed to practice law in the State of Louisiana for at least five years previous to his election . . . ."
As to the trial judge's ruling on the exceptions, we have reviewed the pleadings and rulings of the trial court. We find that he was correct in overruling each of the exceptions. The exceptions are without merit.
Concerning the second issue of residency, the evidence reflects that defendant went to Breaux Bridge on Friday, July 14, 1978, for the purpose of leasing a furnished house from Abe DelaHoussaye. A written lease was entered into at approximately 1:30 P.M. The lease was for a period of six months with an option for an additional six months for a consideration of $75.00 per month. Defendant moved his personal belongings into the home at that time. That same afternoon defendant opened a checking account at the Breaux Bridge Bank & Trust Company. He also made a deposit at the same bank on that day. At approximately 2:00 o'clock that same afternoon, defendant obtained a post office box in Breaux Bridge and paid for a year's rental. Prior to 4:00 P.M. defendant went to Mr. Frank Durand, driver's license officer, to renew his driver's license. He changed the address thereon from St. Martinville to his Breaux Bridge post office box Number 213. At approximately 4:00 P.M. he appeared at the office of Mr. Patrick Olivier, Registrar of Voters of St. Martin Parish, and changed his voter registration from Ward 3, Precinct *321 5, to Ward 4, Precinct 10, which is in the jurisdictional area of the city court of Breaux Bridge.[2] Shortly after 4:00 P.M. defendant appeared before Mr. James A. Theriot, Clerk of Court of St. Martin Parish, and President of the Board of Supervisors of Elections of St. Martin Parish, and filed his notice of intention to be a candidate for the office of judge of the city court of Breaux Bridge. Defendant, along with his family, spent that night at his new residence in Breaux Bridge. The following day, Saturday, July 15th, the defendant and family ate breakfast at the Breaux Bridge residence. Defendant spent Saturday night in Breaux Bridge with his son. Sunday morning, July 16th, Mr. deMahy attended church in Breaux Bridge with his son. He then went to St. Martinville so that he could care for the children while his wife attended mass. He later went to a fraternity party that evening in Lafayette, but ultimately went back to Breaux Bridge that night to sleep. The following morning, Monday, July 17th, defendant ate breakfast at the Breaux Bridge residence, went to St. Martinville to take his children to the nursery and then on to work at his law office in St. Martinville. Mr. deMahy went back to Breaux Bridge that Monday night to attend a city meeting. He slept in St. Martinville on Monday night because of an early appointment in Livingston Tuesday morning. Defendant returned to the Breaux Bridge residence on Tuesday evening to sleep. On the morning of Wednesday, July 19th, defendant ate breakfast at the Breaux Bridge residence. He returned to the Breaux Bridge residence on Wednesday and spent the night there. Thursday, July 20th, defendant checked his post office box in Breaux Bridge and then went to work in St. Martinville. Thursday evening, after eating dinner in St. Martinville with his wife and spending time with his children, while his wife attended a meeting in St. Martinville, defendant returned to the Breaux Bridge residence to sleep. Defendant took his son with him on this occasion. Friday morning, July 21st, defendant had breakfast at his Breaux Bridge residence and prepared himself for work.
The trial judge stated in his reasons for judgment:
"In the case now in hearing, it appears to be absolutely uncontroverted that as of the time of qualification there had been no actions of living; there had been no preparation or consumption of food; there had been no sleeping; there had been none of those affirmative acts of human beings by which they live, by which they conduct their day-to-day living requirements. Under such a situation and the Court will find that the preponderance of the evidence is massive to the extent of being inescapable that as of the time of qualification, by virtue of which the defendant objectee, Paul de-Mahy, attempted to qualify as a candidate for the position sought and to which time plaintiff objector now objects, did not have a residence, was therefore not a resident elector, and was therefore not qualified to be a candidate."
We feel the trial judge was in error. LSA-R.S. 18:101 B reads:
"For the purposes of the laws governing voter registration and voting, `resident' means a citizen who resides in this state and in the parish, municipality (if any), and precinct in which he offers to register and vote, with an intention to reside there indefinitely. If a citizen resides at more than one place in the state with an intention to reside there indefinitely, he may register and vote only at one of the places at which he resides.. . ."
The jurisprudence reflects that the term "resident" is not to be confused with the term "domicile". The word "domicile" means "the principal domestic establishment." A person can have only one "domicile", but may have more than one residence and, even though one of such residences *322 may be maintained for political purposes, such fact does not prevent the residence from being bona fide.
"A person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide. Intent to maintain a residence is an important factor, but intent alone does not establish a bona fide residence. There must be actual, physical use or occupation of quarters for living purposes before residence is established." Williamson v. Willage of Baskin, 339 So.2d 474 (La.App. 2nd Cir. 1976).
". . . it is plain that a Louisiana citizen may legally maintain as many residences as he wishes and his means will allow. See Stavis v. Engler, La.App., 202 So.2d 672. In this sense residence is not to be confused with domicile . . . ."
Brown v. Democratic Committee, Court of Appeal, Fourth Circuit, Third District, et al., 238 So.2d 48 (La.App. 4th Cir. 1970).
Under the facts of this case we conclude that the affirmative actions of the defendant on the afternoon of July 14,1978, were sufficient to meet the requirements necessary to establish a residence for the purpose of registration under the provisions of LSA-R.S. 18:101 B. There is no minimal durational period required for the establishment of such a residence. The intent to establish a residence, coupled with physical actions denoting the acquisition of a residence is sufficient. Defendant's actions before registration, qualification and thereafter reflect an intent to establish and maintain the residence effective beginning at approximately 1:30 P.M. on the afternoon of July 14, 1978.
The third issue is, what is meant by the terminology used in LSA-R.S. 13:2488. 73 reading, "The judge of the city court shall be licensed to practice law in the state of Louisiana for at least five years previous to his election . . ."?
The pertinent facts concerning this issue are that Mr. deMahy was admitted to the practice of law in Louisiana on October 5, 1973. The primary election will occur on September 16, 1978. The general election will occur on November 7,1978. Therefore, the precise question to be determined is: When does the "election" occur?
The identical question was decided before this court on July 25, 1978, in the case of Jory v. Arnette, 360 So.2d 921 (La.App. 3rd Cir. 1978). That case concerned the defendant's eligibility to be a candidate for the office of district attorney for the Thirty-first Judicial District. In that case the defendant was admitted to the practice of law in the State of Louisiana on September 24,1973; the primary election for the office of district attorney will be held on September 16, 1978; the general election will be held on November 7, 1978. Therefore, the defendant in that case would not have been practicing law in the State of Louisiana until eight days after the primary election of September 16, 1978. The court, after reviewing the election process found in the Louisiana Election Code, held as follows:
"In his petition, plaintiff questions defendant's eligibility as a candidate for the office of district attorney. Plaintiff thus took upon himself the burden of establishing by a reasonable preponderance of the evidence that defendant does not possess the requisite qualifications as provided in Article V, § 26 of the Louisiana Constitution of 1974, i. e., that he will not have been admitted to the practice of law in the State of Louisiana for at least five years prior to `his election'. Meyer v. State, Dept. of Public Safety Lic. Com., etc., 312 So.2d 289 (La.1975); Mix v. Alexander, 318 So.2d 130 (La.App. 4th Cir. 1975).
"Our consideration of the stipulated facts of this case, in light of the Louisiana Election Code and the cited constitutional provision, prompts us to conclude that the plaintiff has failed to establish by a reasonable preponderance of the evidence that defendant's election to the office of district attorney will occur prior to September 24, 1978, and that the trial judge erred in so holding.

*323 "A review of the Louisiana Election Code indicates the possibility of several contingencies, anyone of which would prevent the September 16, 1978 primary election from deciding who is to serve as the district attorney of the Thirty-First Judicial District. The September 16,1978 primary election will not be decisive if the death of a candidate occurs and qualifications are reopened (LSA-R.S. 18:469), nor will the primary election be decisive if the election results in a tie vote (LSA-R.S. 18:511). Additionally, the results of the September 16,1978 primary would be inconclusive if an election contest suit were filed, the results of the primary election being final only after judgment in the action contesting the election becomes definitive (LSA-R.S. 18:575). Arguably, these are remote contingencies, however, be that as it may, plaintiff's burden in the instant case is to prove by a reasonable preponderance of the evidence that defendant's election will occur prior to September 24, 1978. It is clear that plaintiff has not carried his burden of establishing that defendant will, under all circumstances, be elected prior to the fifth anniversary of his admission to the Louisiana Bar.
"We believe that this conclusion and the construction which we accord to the cited constitutional provision and the Louisiana Election Law is consistent with the well recognized principle that laws governing the conduct of elections should be liberally interpreted so as to promote rather than defeat candidacy. Rich v. Martin, 259 So.2d 113 (La.App. 1st Cir. 1975), writ of certiorari denied."
In the present case plaintiff has likewise failed to establish by a reasonable preponderance of the evidence that defendant's election to the office of judge of the City Court of Breaux Bridge will occur prior to October 5, 1978, the date upon which the defendant will have been practicing law in the State of Louisiana for five years.
We have decided this case on the merits. We recognize, however, that a serious question exists as to whether plaintiff proved that he was a registered voter of Ward 4, Precinct 10 of St. Martin Parish as required by LSA-R.S. 18:491.[3] Since we have disposed of this case on the merits, however, we do not reach this issue.
For the foregoing reasons, the judgment of the district court is reversed and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed at his cost.
REVERSED AND RENDERED.
NOTES
[1] The statute which sets forth the qualifications for the city judge of Breaux Bridge is found in LSA-R.S. 13:2488.73 A and reads as follows:

"A. The judge of the city court shall be licensed to practice law in the state of Louisiana for at least five years previous to his election and be a resident elector of the territorial jurisdiction of the court on the date of qualifying for election to the office. The initial judge, to be appointed by the governor, shall be a resident elector of the territorial jurisdiction of the court on the date of his appointment."
[2] LSA-R.S. 13:2488.71 provides that the territorial jurisdiction of the court ". . . shall extend throughout the town of Breaux Bridge, Louisiana and throughout the whole of Ward 4, St. Martin Parish, Louisiana. . . ."
[3] LSA-R.S. 18:491 reads as follows:

"A registered voter may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office for which the plaintiff is qualified to vote."