PER CURIAM.
This is an election contest. The plaintiff-appellant, Dr. Garland D. Miller, Jr., a candidate for Coroner of Sabine Parish, instituted this suit seeking to have the incumbent coroner, Dr. C.E. Poimboeuf, defendant-appellee, declared disqualified to run for the position of Coroner of Sabine Parish.
Judgment was rendered in favor of the defendant denying the challenge of the plaintiff against the candidacy of Dr. Poim-boeuf and from that judgment the plaintiff-appellant has timely perfected this appeal.
The trial court issued well written Reasons for Judgment which completely address the factual and legal issues and which we adopt as our own with only slight additional comments.
REASONS FOR JUDGMENT
“Dr. Poimboeuf is a registered voter in Ward 7, Precinct 1, Sabine Parish and has been continuously since 1964.
“His address has been P.O. Box 66, Pleasant Hill, (Sabine Parish), Louisiana since 1961, continuously.
“This is the address at which he receives virtually all of his mail, professional and personal, and the one that is reflected on his driver’s license, personal professional cards, American Legion Card, Louisiana State Board of Medical Examiner card, Southern Medical Association card, card issued to him by the Secretary of State, *485 State of Louisiana, as Coroner of Sabine Parish, as well as the address at which he received personal mail.
“Dr. Poimboeuf has served as Sabine Parish Coroner for six (6) years, and prior to that served as Deputy Coroner for a number of years, at a time when his father was coroner.
“Dr. Poimboeuf is associated with the Pleasant Hill General Hospital, Inc., in Pleasant Hill, and is a part owner. He practices medicine in Sabine Parish, exclusively, on a full time daily basis, and has since 1961.
“His five children all attended and graduated from Pleasant Hill High School. In the 1970’s, during integration the question arose as to the residence of Dr. Poimboeuf and the propriety of his children attending the public school in Pleasant Hill. The result of Judge Tom Stagg’s decision allowed them to continue school in Pleasant Hill.
“The evidence established that defendant maintained a residence telephone number in DeSoto Parish since 1963, and that the telephone directory itself showed a corresponding DeSoto Parish address. However, this number was also shown by the facts to ring at a Pleasant Hill address in Sabine Parish, with all telephone bills received at the Pleasant Hill address.
“The facts show that both the DeSoto and Sabine Parish addresses consisted of two homes belonging to the defendant and his family. The DeSoto property consisted of a home and a farm approximately two or three miles from the city limits of Pleasant Hill, Louisiana, in Sabine Parish. This home according to defendant’s testimony, was where he spent primarily nights, on a frequent basis. The Sabine Parish address in Pleasant Hill, Louisiana consisted of a home and a lot within the main part of the city, about five blocks from the hospital where defendant worked.
“From the evidence, it can be adduced that the home in Pleasant Hill and the farm home in DeSoto Parish were acquired within a few years of each other over 20 years ago, and that the defendant and his family acquired the Pleasant Hill house as a residence and had always considered it as such. The Pleasant Hill residence is utilized by the defendant, his wife and children for sleeping, eating, and general domestic activities. The facts show that a housekeeper attends to the house, a washer, dryer, refrigerator, television and other appliances are located there, and clothes, furniture [,] furnishings and other significant possessions are kept there in order to maintain the place for the use and personal relationship generally connoted with a ‘residence’. The home contains three bedrooms, bathrooms, and requires constant upkeep and utility maintenance as any other residence would require.
“Testimony from the defendant indicated that he and his family had maintained the Pleasant Hill home as a residence continuously for the past twenty years, with no intention of ever abandoning it. In fact, the evidence showed that as soon in the near future that the defendant’s children are able to maintain the farm home in DeSoto Parish autonomously, the defendant and his wife will relinquish that property altogether in favor of the Sabine Parish home solely because it is easier to maintain and he spends most of his time in Pleasant Hill, in his medical practice.
“Article V, Section 29 of the Louisiana Constitution of 1974, provides as follows concerning the qualifications for the office of coroner:
“ ‘In each parish a coroner shall be elected for a term of four years. He shall be a licensed physician and possess the other qualifications provided by law.’
“This constitutional provision varies from that contained in Article VIII, Sec. 13, of the Louisiana Constitution of 1921. That article provided, in pertinent part, as follows:
“ ‘No person shall be eligible to any office, state, district, parochial, municipal, or ward, who is not a citizen of this State and a duly qualified elector of the State, district, parish, municipality or ward, wherein the functions of said office are to be performed.’
*486 “The provisions of Article VIH, Sec. 13 of the 1921 Constitution were not retained in the 1974 Constitution, nor were they carried forward as statutory law. On the contrary, under the express provisions of Article XIV, Sec. 17 of the Louisiana Constitution of 1974, the above referred to provisions of the 1921 Constitution were repealed, effective midnight, December 31, 1974.
“Therefore, at the present time there is no constitutional requirement that a candidate or office holder be a resident of, or a duly qualified elector of the district, parish, municipality or ward, wherein the functions of the office are to be performed. Williamson v. Village of Baskin, La.App.2nd Cir.1976, 339 So.2d 474.
“This brings us back to the portion of the 1974 Constitution which provides that the coroner shall, in addition to being a licensed physician, ‘possess the other qualifications provided by law’.
“What other qualifications does the law require?
“Referring to local candidates, which, in this case means a candidate for a parish office, LSA-R.S. 18:462(B) provides, in pertinent part, as follows:
“ ‘Local and municipal candidates shall qualify for a primary election either with the Clerk of Court or secretary of the parish board of election supervisors for the parish in which the candidate is registered to vote.’
“In this case the evidence establishes that Dr. Poimboeuf is a registered voter of Sabine Parish.
“Clearly, as a registered voter of Sabine Parish, Dr. Poimboeuf was eligible to qualify with the Clerk of Court as a candidate in the upcoming primary election, for coroner of Sabine Parish.
“At first blush it would appear that the single issue before the Court at this time is whether Dr. Poimboeuf was registered to vote in Sabine Parish at the time he qualified as a candidate. If that is the sole issue, then he is qualified to be a candidate for coroner.
“However, plaintiff takes the position that the issue is whether or not defendant is a resident of Sabine Parish. Since plaintiff, in pre-trial memorandum, addresses both the residency issue and the voter registration requirement, it appears that plaintiff is, in effect, challenging Dr. Poim-boeuf's registration as a voter in Sabine Parish on the basis that only a resident is eligible to register to vote, and that Dr. Poimboeuf is not a resident, and therefore not eligible to vote, and therefore not eligible to be a candidate for. the office of coroner of Sabine Parish.
“The Court will address this proposition as being the paramount issue in this litigation.
“LSA-R.S. 18:101(B) provides in pertinent part:
“ ‘For purposes of the laws governing voter registration and voting, “resident” means a citizen who resides in this state and in the parish, municipality (if any) and precinct in which he offers to register and vote, with an intention to reside there indefinitely. If a citizen resides at more than one place in the state with an intention to reside there indefinitely, he may register and vote only at one of the places at which he resides.
[[Image here]]
“A citizen of this state shall not be or remain registered or vote in more than one place of residency at any one time.'
“At the outset the Court will point out that the jurisprudence reflects that the term ‘residence’ is not to be confused with the term ‘domicile’.
“The general definition of domicile is contained in LSA-C.C. Art. 38:
“ ‘The domicile of each citizen is in the parish wherein he had his principal establishment.
“The principal establishment is that in which he makes his habitual residence; if he resides alternatively in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment *487 at the option of the persons whose interests are thereby affected.’
“The Louisiana Supreme Court, in the case of Messer v. London, 438 So.2d 546, on the questions of domicile and residence had the following to say:
“ ‘Residences and domiciles are not synonymous terms. A person can have several residences but only one domicile.
[[Image here]]
“Domicile is a person’s principal domestic establishment, as contrasted to a business establishment.’
“In the case of Soileau v. Board of Supervisors, St. Martin Parish, 361 So.2d 319, the Third Circuit Court of Appeal held that the term, residence, is not to be confused with the term ‘domicile’. The Court further held that a person can have only one ‘domicile’, but may have more than one residence and, even though one of such residences may be maintained for political purposes, such fact does not prevent the residence from being bona fide.
“In Stavis v. Engler, 202 So.2d 672 (La.App. 4th Cir.) the Court held that a Louisiana citizen may legally maintain as many residences as he wishes and as his means will allow. The Court furhter stated that he could not legally register and qualify as an elector in more than one precinct, but the choice was his.
“In Brown v. Democratic Committee, Court of Appeal, Fourth Circuit, 238 So.2d 48, the qualification of a man named Harry T. Lemmon to be a candidate for judge of the Court of Appeal was challenged on the grounds that he was not a resident of Jefferson Parish, and therefore not eligible to be a candidate. The fact was that Harry T. Lemmons’ domicile was on Napoleon Avenue, New Orleans, Orleans Parish, whereas he had qualified to be a candidate in Jefferson Parish. In its opinion the Court said:
“ 'The principal question related to residence is not so obvious as it might seem.’
“The Court further stated that it is plain that a Louisiana citizen may legally maintain as many residences as he wishes and his means will allow. The Court further noted that residence, which is the matter at issue, is not to be confused with the concept of domicile, which directs its focus to a citizens principal domestic establishment.
“The Court went on to say that whether or not the principal Lemmon domestic establishment has been or was always in Orleans, or Jefferson, was entirely irrelevant. The sole question was whether Mr. Lemmon maintained a residence within the district in which he qualified.
“The evidence established that for several years Mr. Lemmon had maintained his offices in Jefferson Parish and spent virtually all of his waking days there. He and his wife spent some of their nights there. The Court found that these facts together with other pertinent details, constituted residency in Jefferson Parish.
“In the Brown case, the Louisiana Supreme Court expressly disclaimed any implication that mere physical absence would prevent a person from being a ‘resident’. The Court established as a test that an individual is ‘required to maintain such a relation with the place or premises so selected as will entitle him at his will, and without making new arrangements therefor upon each return to occupy such place whenever his necessities or pleasure require, and this without having to ask the permission of someone else.’
“It is clear in the instant case that the defendant meets this test. He is entitled at will and without the making of new arrangements to occupy the residence he has established in Sabine Parish whenever his necessities or pleasures required, and without having to ask anyone’s permission to do so. The home in Pleasant Hill, Louisiana, contained all the comforts, amenities, and ordinary fixtures and furnishings that meets society’s expectations of a residence. Telephone and utility service were maintained, meals were prepared, regular housekeeping chores were done, and sleeping and other normal body functions and needs were carried out in the home.”
From Dr. Poimboeuf’s own testimony, it is clear that the domestic functions mentioned above, in the trial court’s Reasons, were performed more and more at his De- *488 Soto residence in the past two years. However, the Pleasant Hill residence was fully maintained as before and had telephone, utility, and water services. The rest of the trial court’s Reasons are adopted without amendment.
“Residence is not a quantitative concept, but a qualitative concept. Leopold v. Democratic Executive Committee, 8 La.App. 232 (1927). Even so, the defendant established that his actual presence at the Sabine residence is regular and includes a substantial amount of working and nonworking time. The fact of his children attending Pleasant Hill schools, defendant’s voter and vehicle registration, driver’s license, receipt of mail and economices activity, all coupled with his intention to reside in Sabine Parish, leads to the inescapable conclusion that he met both the presence and the intent requirements needed for one to establish a bona fide residence.
“Various indicia have been set forth to prové, by a totality of the circumstances, whether an individual has established a ‘bona fide residence’. Among these are where the person is registered to vote, where his motor vehicles are registered, where he maintains bank accounts and receives mail, where he leases or owns property, where he contracts and transacts business affairs, and whether the person has been nominated or is serving in various political offices at the address in question. Mix v. Alexander, App.1975, 318 So.2d 130. In Slocum v. DeWitt, La.App. 3rd Cir.1979, 374 So.2d 755, it was held that where a person spends the greater portion of both his economic activity as well as his nonworking time are factors that should be given weight in the determination of a residence or a domicile. There must exist a sufficient quantity and quality relationship with the particular place, notwithstanding the fact that it was established for political purposes. These circumstances are a factual determination to be made by the trial court in light of all relevant supporting evidence. Evans v. West, App.1978, 357 So.2d 916. The burden of proof rests upon the challenger. Charbonnet v. Hays, La.App. 4th Cir.1975, 318 So.2d 917.
“The construction accorded to the cited La. Constitutional provision and the La. Election Laws is consistent with the well recognized legal principle that laws governing the conduct of elections should be liberally interpreted so as to promote rather than defeat candidacy. Rich v. Martin, La.App. 1st Cir.1975, 259 So.2d 113. Any doubts should, therefore, be resolved in favor of permitting a candidate to run for public office. Slocum v. DeWitt, supra.
“Considering the applicable statutory provisions of our law, and the jurisprudence interpreting and applying that law, it is the opinion of the Court, in this case, that the evidence has established that Dr. C.E. Poimboeuf’s principal domestic establishment, i.e., his domicile, is located in DeSoto Parish and that from a totality of the evidence he likewise maintains a residence in Sabine Parish which meets the voter residency requirements set forth in R.S. 18:101(B) and R.S. 18:462(B); and the qualifications set forth for the office of parish coroner in Article V, Sec. 29 of the 1974 Louisiana Constitution, and accordingly has met the general qualifications for candidacy for the office of coroner of Sabine Parish as prescribed by Title 18, the Louisiana Election Code.
“Accordingly, the demands of the plaintiff should be rejected, at his costs.
“Many, Sabine Parish, Louisiana, this 7th day of August, 1987.”
Considering the trial court’s findings, the testimony, and the law, the record clearly establishes that Dr. Poimboeuf has met all the requirements of having a bonafide residence in Pleasant Hill, Sabine Parish, is a qualified voter in Sabine Parish in accordance with LSA-R.S. 18:101(B), and therefore may run for the office of Coroner of Sabine Parish in accordance with LSA-R.S. 18:462(B).
For these reasons, the trial court’s judgment is affirmed. All costs of this appeal are assessed against plaintiff-appellant.